# United States Court of Appeals for the Federal Circuit

———————————

**HUTCHISON QUALITY FURNITURE, INC.,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

———————————

2015-1900

———————————

Appeal from the United States Court of International Trade in No. 1:14-cv-00248, Judge Claire R. Kelly.

———————————

Decided: July 6, 2016

———————————

JOHN MICHAEL PETERSON, Neville Peterson LLP, New York, NY, argued for plaintiff-appellant. Also represented by RUSSELL ANDREW SEMMEL.

STEPHEN CARL TOSINI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON, PATRICIA M. MCCARTHY.

———————————

Before REYNA, CLEVENGER, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

This appeal concerns certain entries of merchandise imported by Appellant Hutchison Quality Furniture, Inc. ("Hutchison") and subsequent actions taken on those entries by the United States Department of Commerce ("Commerce") and the United States Department of Homeland Security's Customs and Border Protection ("Customs"). The United States Court of International Trade ("CIT") dismissed Hutchison's Complaint for lack of subject matter jurisdiction, holding that because Hutchison could have pursued a remedy under 28 U.S.C. § 1581(a) (2012), it could not invoke jurisdiction pursuant to § 1581(i)(4). *See Hutchison Quality Furniture, Inc. v. United States*, 71 F. Supp. 3d 1375, 1379 (Ct. Int'l Trade 2015). We affirm.

BACKGROUND

In 2007, Hutchison imported wooden bedroom furniture from the People's Republic of China ("China"). The merchandise was exported by Orient International Holding Shanghai Foreign Trade Co., Ltd. ("Orient International").

Commerce subsequently conducted an administrative review of an antidumping duty order on wooden bedroom furniture from China that examined Orient International's exports.[1] In the review's final results, Commerce

---

[1] "Commerce imposes duties on imported merchandise that is being, or is likely to be, sold in the United States at less than fair value . . . ." *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010) (internal quotation marks and citation omitted). "Sales at less than fair value are those sales for which the normal value (the price a producer charges in its home market) exceeds the export price (the price of the product in the United States) or constructed export price." *Id.* (internal

assigned an antidumping duty margin of 216.01% to Orient International's exports. *Wooden Bedroom Furniture from the People's Republic of China*, 74 Fed. Reg. 41,374, 41,380 (Dep't of Commerce Aug. 17, 2009) ("Final Results").

Orient International initiated an action in the CIT challenging various aspects of the Final Results. The CIT enjoined Commerce from instructing Customs to liquidate the subject entries[2] and directed "that the entries subject to this injunction shall be liquidated in accordance with the final court decision in this action, including all appeals, as provided in 19 U.S.C. § 1516a(e)." J.A. 19.

On February 5, 2013, the CIT sustained Commerce's remand redetermination pertaining to the Final Results, including its selection of a new rate of 83.55%. *Lifestyle Enter., Inc. v. United States*, 896 F. Supp. 2d 1297, 1299 (Ct. Int'l Trade 2013). Orient International did not ap-

---

quotation marks and citation omitted). "At the conclusion of a[n] . . . antidumping duty investigation, assuming the requisite findings are made [by Commerce and the United States International Trade Commission], Commerce may issue orders imposing duties on imports of goods covered by the investigation." *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014). Upon request, Commerce may conduct an administrative review of an antidumping duty order to determine the dumping margin for entries of subject merchandise made during a twelve month period. *See* 19 U.S.C. § 1675(a)(1) (2012).

[2]   At the conclusion of an administrative review, Commerce issues instructions to Customs that reflect the amount of dumping duties to be assessed when Customs liquidates the subject entries. 19 C.F.R. § 351.221(b)(6) (2015); *see also* 19 C.F.R. § 159.1 ("Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries.").

peal the CIT's decision.  On June 13, 2013, the CIT ordered that "all entries exported by [Orient International] . . . be liquidated without delay in accordance with this [c]ourt's February 5, 2013 [F]inal [J]udgment."  J.A. 1045. Commerce then issued instructions to Customs to liquidate Orient International's exports of subject merchandise at Commerce's redetermined rate of 83.55%.  J.A. 39.  In September 2013, Customs liquidated the entries at this rate.

Hutchison then filed a protest with Customs pursuant to 19 U.S.C. § 1514,[3] J.A. 1027, asserting that its entries were outside the scope of the antidumping duty order, J.A. 1030.  Customs denied the protest.  J.A. 1027.

In October 2014, Hutchison sought review of the liquidation of its entries before the CIT, invoking jurisdiction under 28 U.S.C. § 1581(i)(4).  J.A. 1002.  Specifically, Count I of Hutchison's Complaint asserted that the subject entries should not have been liquidated at the rate provided in Commerce's instructions (i.e., 83.55%), but rather should have been deemed liquidated at the rate at which they entered (i.e., 7.24%) pursuant to 19 U.S.C. § 1504(d).  J.A. 1004, 1014–15.  Section 1504(d) provides that "[w]hen a suspension required by statute or court order is removed, [Customs] shall liquidate the entry . . . within [six] months after receiving notice of the removal from [Commerce], other agency, or a court with jurisdiction over the entry," and that if the entry is not liquidated within six months, the entry "shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record"

---

[3]     A party may protest "any clerical error, mistake of fact, or other inadvertence . . . adverse to the importer[] in any entry, liquidation, or reliquidation" made by Customs in certain decisions.  19 U.S.C. § 1514(a) (listing protestable decisions).

at the time of entry ("deemed liquidation"). 19 U.S.C. § 1504(d). Hutchison included no other count in its Complaint.

In its Prayer for Relief, however, Hutchison argued that Commerce's liquidation instructions were arbitrary and capricious because they misidentified "the date on which suspension of liquidation was lifted." J.A. 1015. Commerce's instructions provided that notice of removal of the suspension occurred on June 13, 2013, the date that the CIT amended the injunction governing Orient International's exports. J.A. 37–38. Hutchison claimed that the suspension of the liquidation under the CIT's injunction expired when the CIT entered Final Judgment on February 5, 2013. J.A. 1013. Accordingly, Hutchison sought a declaratory judgment that its entries were deemed liquidated by operation of law in August 2013, approximately six months after the CIT's February 5, 2013 Final Judgment. J.A. 1002, 1015–16 (referencing 19 U.S.C. § 1504(d)).

The CIT dismissed Hutchison's Complaint for lack of subject matter jurisdiction. The CIT found that the "true nature of [Hutchison's] claim involves a protestable [Customs] decision regarding liquidation and/or deemed liquidation." *Hutchison*, 71 F. Supp. 3d at 1378. The CIT held that "a decision by [Customs] as to liquidation is a protestable decision," which Hutchison could have appealed pursuant to 28 U.S.C. § 1581(a) if its protest was denied, "regardless of whether the [February 5, 2013 Final Judgment] constituted a final court decision or whether [that Final Judgment] constituted notice to [Customs] starting the six month period in § 1504(d)." *Id.* Because Hutchison could have protested any allegedly erroneous liquidation and appealed any denial of such a protest pursuant to 28 U.S.C. § 1581(a), the CIT applied the "well-settled [rule] that a party may not invoke jurisdiction under [28 U.S.C.] § 1581(i) when jurisdiction under another subsection of § 1581 . . . could have been

available." *Id.* (internal quotation marks and citation omitted). Accordingly, the CIT found jurisdiction lacking. *Id.* at 1381.

Hutchison appeals the CIT's dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

### I. Standard of Review

We review the CIT's "decision to grant the Government's motion to dismiss [for lack of subject matter jurisdiction] *de novo* as a question of law." *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1345 (Fed. Cir. 1995). "[T]he party invoking [the CIT's] jurisdiction bears the burden of establishing it." *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). However, we "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Hartford Fire Ins. Co. v. United States*, 772 F.3d 1281, 1284 (Fed. Cir. 2014) (internal quotation marks and citation omitted).

### II. The CIT Properly Held that it Lacked Subject Matter Jurisdiction Over Hutchison's Complaint

Chapter 95 of Title 28 of the United States Code contains Congress's jurisdictional grant to the CIT. The first section, § 1581, is titled "Civil actions against the United States and agencies and officers thereof" and consists of subsections (a) through (j). 28 U.S.C. § 1581. "Each [§] 1581 subsection delineates particular laws over which the [CIT] may assert jurisdiction." *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988). The sole issue in this appeal is whether the CIT correctly applied its own jurisdictional statute, 28 U.S.C. § 1581.

The CIT held that Hutchison could have sought judicial review pursuant to § 1581(a) and therefore could not invoke the CIT's jurisdiction under § 1581(i)(4).

*Hutchison*, 71 F. Supp. 3d at 1379. Section 1581(a) provides the CIT with "exclusive jurisdiction [over] any civil action commenced to contest the denial of a protest" by Customs. 28 U.S.C. § 1581(a). Protestable decisions include "the liquidation . . . of an entry . . . pursuant to . . . [19 U.S.C. § 1504]." 19 U.S.C. § 1514(a)(5). Section 1581(i) provides the CIT with residual jurisdiction over civil actions that arise from import transactions. *See Conoco, Inc. v. U.S. Foreign–Trade Zones Bd.*, 18 F.3d 1581, 1588 (Fed. Cir. 1994). In particular, subsection (i) provides the CIT with

> exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for–
>
> > (1) revenue from imports or tonnage;
> >
> > (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> >
> > (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> >
> > (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i). "[T]o prevent circumvention of the administrative processes crafted by Congress [in other subsections of § 1581]," we have held that "jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of section 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate." *Hartford Fire Ins. Co. v.*

*United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008) (citation omitted).

We look to the "true nature of the action" in determining whether the CIT properly found jurisdiction lacking. *Id.* at 1293 (citation omitted). The true nature of a particular action will depend upon the attendant facts asserted in the pleadings. *See Norsk*, 472 F.3d at 1355; *Williams v. Sec'y of Navy*, 787 F.2d 552, 557–58 (Fed. Cir. 1986) (explaining that "the substance of the pleadings define a suit"). Determining the true nature of an action under § 1581 requires us to discern the particular agency action that is the source of the alleged harm so that we may identify which subsection of § 1581 provides the appropriate vehicle for judicial review. *See Nat'l Corn Growers Ass'n*, 840 F.2d at 1555.

## A. The True Nature of Hutchison's Complaint Concerns a Protestable Customs Decision

Hutchison argues that "[t]he CIT erred in dismissing [its claim] for lack of subject matter jurisdiction" under 28 U.S.C. § 1581(i)(4) because the CIT erred in determining the true nature of its action. Hutchison's Br. 19. Hutchison asserts that, in holding that its "sole avenue for raising its claim was to protest [Customs]'s allegedly untimely liquidation of its entries, and to bring suit under [the CIT's] 28 U.S.C. § 1581(a) 'protest' jurisdiction," the CIT "overlook[ed] the fact that the decision which Hutchison challenges" was made by Commerce as opposed to Customs. *Id.* According to Hutchison, "[a] protest against the assessment of antidumping duties [under 28 U.S.C. § 1581(a)] can only be brought . . . where the error results from a decision by [Customs], and not in those cases where [Customs] is merely carrying out its ministerial tasks of enforcing and applying Commerce decisions and instructions." *Id.* (citations omitted). We disagree.

The true nature of Hutchison's action is a challenge to Customs's September 2013 liquidation of its entries.

What Hutchison ultimately seeks is the liquidation of its entries at the rate its merchandise entered (i.e., 7.24%) because, according to Hutchison, the entries should have been deemed liquidated in August 2013, one month before Customs actually liquidated the entries at the 83.55% rate provided in Commerce's instructions. J.A. 1002, 1014–15. A deemed liquidation is a protestable event that falls squarely within the ambit of 28 U.S.C. § 1581(a). *See Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1374 (Fed. Cir. 2002) (An importer challenging liquidation can "invoke[] the jurisdiction of the [CIT] under 28 U.S.C. § 1581(a) if, pursuant to 19 U.S.C. § 1514(a)(5)," which cross-references the deemed liquidation provision of 19 U.S.C. § 1504, the importer "timely protest[s] the liquidations."); *see also Cemex, S.A. v. United States*, 384 F.3d 1314, 1324 (Fed. Cir. 2004) ("While we agree that Customs'[s] role in making *antidumping decisions, i.e.*, in calculating antidumping duties, is generally ministerial, Customs here made a decision regarding *liquidation*," which may be protested under § 1514(a). (footnote omitted)).

Hutchison's contention that the true nature of its action focuses on Commerce's instructions belies the terms of its Complaint. Hutchison included only one count in its Complaint, and that count speaks only to deemed liquidation, an action committed solely to Customs. 19 U.S.C. §§ 1500(c)–(d), 1504(d). Had Hutchison intended its action to concern Commerce's liquidation instructions, we suspect it would have included an additional count with the relevant allegations and legal authority.

Our decision in *Fujitsu* confirms that the true nature of Hutchison's appeal concerns Customs's liquidation of its entries. In *Fujitsu*, the appellant argued that "*Customs* had improperly failed to liquidate the entries within six months of having received notice that the injunction against liquidation had been removed." 283 F.3d at 1367 (emphasis added). The appellant in *Fujitsu* did not allege

a Commerce error. *See id.* We held that the appellant could not invoke the CIT's jurisdiction under 28 U.S.C. § 1581(i)(4) because the appellant could have pursued a remedy under § 1581(a). *See id.* at 1376.

Hutchison's Complaint attempts to distinguish its appeal from *Fujitsu* by emphasizing the facts related to Commerce's June 25, 2013 instructions to Customs. J.A. 1013–15. Indeed, Hutchison attempts to attribute a Customs decision (i.e., whether to treat certain entries as deemed liquidated) to Commerce. *See* J.A. 1013–15; *see also* 19 U.S.C. §§ 1500(c)–(d), 1504(d) (providing Customs with the authority to deem entries liquidated). Although the facts in the instant appeal and *Fujitsu* are different, Hutchison's recasting of the liquidation of its entries as a Commerce error obscures the true nature of its action. *See Hartford Fire*, 544 F.3d at 1293.

Accordingly, we agree with the CIT that Hutchison "is challenging a decision by [Customs] as to the appropriate time for liquidation," that this "decision would have been protestable under 19 U.S.C. § 1514(a)(5)," and any denial of the protest would have been reviewable under 28 U.S.C. § 1581(a).[4] *Hutchison*, 71 F. Supp. 3d at 1380.

---

[4] Even if we regarded the true nature of Hutchison's appeal to concern Commerce's liquidation instructions, such that the CIT possessed jurisdiction under § 1581(i)(4), Hutchison fails to assert a claim for which relief could be granted because it has not based its claim for relief on a plausible legal theory. *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471–72 (2014) (explaining that allegations in a complaint must rest on a plausible legal theory to survive a motion to dismiss for failure to state a claim). Hutchison argues that Customs should have determined the deemed liquidation date by using the CIT's February 5, 2013 Final

## B. Hutchison's Remedy Under 28 U.S.C. § 1581(a) Was Not Manifestly Inadequate

"[J]urisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of section 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate." *Hartford Fire*, 544 F.3d at 1292 (citation omitted). "To be manifestly inadequate, the protest must be an exercise in futility"—i.e., "incapable of producing any result." *Id.* at 1294 (internal quotation marks, emphasis, and citation omitted). Although Hutchison alleges it "mistakenly filed" a protest that Customs denied, Hutchison's Br. 21 n.9, it nonetheless contends that any challenge to Customs's liquidation of its entries would have been "manifestly [inadequate because its claim] could not have been raised by protest and [therefore] by an action brought under 28 U.S.C. § 1581(a)," *id.* at 21 (footnote omitted). Specifically, Hutchison asserts that "a protest cannot be filed with [Customs] to challenge a decision by another federal agency, [such as Commerce,] in circumstances

---

Judgment as the starting point. Hutchison's Br. 30. However, that argument ignores *Fujitsu*, which held that a final judgment does not take effect immediately, but only after the time for further appeal expires, or the mandate in any appeal therefrom issues and the time to file a petition for certiorari expires. *See, e.g.*, *Fujitsu*, 283 F.3d at 1379. Thus, because the relief sought in Hutchison's Complaint rests on a faulty legal premise, its Complaint fails to state a claim for relief that the CIT could grant. To the extent Hutchison asks us to reconsider *Fujitsu*, *see* Hutchison's Br. 31, we may not, *see Deckers Corp. v. United States*, 752 F.3d 949, 965 (Fed. Cir. 2014) (explaining that only the en banc court or the Supreme Court has the authority to overrule prior precedential panel decisions).

where [Customs's] role in relation to that decision is ministerial." *Id.*

We have held that an importer "seeking to use [a deemed liquidation] claim as a sword in a refund action under 28 U.S.C. § 1581(i)" may not invoke jurisdiction under § 1581(i)(4) if the importer *"could have* timely protested Customs'[s] purported liquidations under 19 U.S.C. § 1514(a)(5)." *Fujitsu,* 283 F.3d at 1375–76 (emphasis added). Indeed, when Customs makes a decision to liquidate, that decision is "[m]ore than passive or ministerial" and "constitute[s] a 'decision' within the context of section 1514(a)." *Cemex,* 384 F.3d at 1324. The record demonstrates that Hutchison not only could have filed a protest, but that it in fact did so after Customs liquidated its entries. J.A. 1027. Hutchison's incorrect "belief that it had no remedy under subsection 1581(a) [does] not make that remedy inadequate," and in any event is belied by the actions Hutchison took prior to filing suit. *Hartford Fire,* 544 F.3d at 1294.

A party filing a protest is required to "set forth distinctly and specifically . . . the nature of each objection and the reasons therefor." 19 U.S.C. § 1514(c)(1)(C). In its protest, Hutchison asserted that its entries were outside the scope of the antidumping duty order.[5] J.A. 1030. It did not allege that the entries were or should have been deemed liquidated pursuant to 19 U.S.C. § 1504(d), as it does in its Complaint. While Hutchison could have raised its deemed liquidation argument at any time before Customs denied its protest, *see* 19 U.S.C. § 1514(c)(1), its failure to do so means the CIT was unable

---

[5]    In this respect, Hutchison's protest sought relief from the wrong Federal agency. Commerce, not Customs, determines whether a particular product falls within the scope of an antidumping duty order. *See* 19 C.F.R. § 351.225(a).

to exercise jurisdiction pursuant to § 1581(a). *See Fujitsu*, 283 F.3d at 1371–73 (holding that the CIT may not invoke § 1581(a) jurisdiction over new grounds for relief that a party does not raise in its protest to Customs). With that avenue closed, Hutchison likely regarded § 1581(i)(4) as its only option for judicial review. However, a party's failure to timely raise an argument to Customs in a protest does not change the fact that jurisdiction under section 1581(a) *could have been* available if the argument had been timely raised. *See id.* at 1376; *Juice Farms*, 68 F.3d at 1346. Therefore, the CIT properly dismissed the case for lack of jurisdiction.

## CONCLUSION

We have considered Hutchison's remaining arguments and find them unpersuasive. Accordingly, the decision of the United States Court of International Trade is

## **AFFIRMED**